May it please the court, Leon Hezani for the petitioner, Ricardo Andre Richards. Your Honours, I would urge the court to review de novo both of the convictions at question in this matter and reject that there are crimes involving moral turpitude, especially with regard to New York penal law for menacing, which is found at 120.14. There's no dispute that... Mr. Hezani, could you tell us in layman's language what the petitioner here did to make him guilty of the assault and menacing penal law provisions in New York law? I mean, what exactly did he do? Your Honour... Is that in the record at all? What exactly he did is not in the record at all. You don't know? I don't know. You don't know whether this is a barroom brawl or an altercation at a candy store? All we know is the fact of the conviction. Your Honour, the government presented no evidence as to what happened or at the very best presented some conflicting documents, which are extremely summary in nature. This is why the BIA employed and the IJ employed a categorical approach. Well, just to answer the prior question, Mr. Richards testified that he had no recollection of what happened because of issues he had with alcohol abuse earlier in life. So the record before the board and the IJ doesn't show what took place. Even if it did, I believe it would be incorrect for both the board and the IJ to take those factors into consideration because the court needs to decide whether or not this is categorically a CIMT. There's no dispute that the menacing statute 120.14 is divisible. There's three prongs to it. I would submit that neither of them, under the proper standards, would be found to be a crime of moral turpitude. The reason I say that is because to accept the government's position regarding the 120.00 assault being a crime of moral turpitude, they rely on a BIA case there, Solon. And in that case, the board, and in some unpublished decisions, the Second Circuit, they look to New York law, New York state law, in defining what's the minimum conduct required to meet the definition of an assault under that particular statute. With regard to the menacing, there is absolutely or extremely limited New York law as to what the minimum conduct would be required to be convicted under any one of those three prongs. Specific intent to cause fear of injury. Well... Isn't that what New York law clearly requires with respect to 120.14.1? What I would say is I agree that we should look to the statute because there is essentially no interpretation of what those prongs mean. Therefore, we should look to see what's the minimum conduct that one could commit and still be convicted under the menacing statute. For example, under prong one, I would submit that a neighbor could be on an individual's lawn and the owner of the property is extremely upset that the neighbor is on the lawn and could grab his kid's water gun and say, you know, get off my lawn or I'm going to whip your behind. I would say that that could be intended to put someone in reasonable fear of physical harm. And why isn't it a person's water gun? Why isn't it... So it's a water gun. In fact, it's designed maybe because it looks like a real gun, designed to put that person on his lawn in fear for his life or at least body. Why doesn't that fit the prong? Because you can't divorce that from what's the government's burden, which is to prove that this conduct is so vile and debase and just beyond the normal standards of society such that it would be considered to be a crime involving moral turpitude. I think that, you know, such conduct probably doesn't meet that definition, you know, to chase someone off your lawn because you don't want them there, for example. No, no, no. It's reasonable fear of physical injury. The question isn't why he wanted them there. The question is what did he use to get rid of them. And if the answer is menacing, that's the question. If it was menacing, then the question is, is that a crime of moral turpitude? It isn't a question of his being on the lawn. I think if you look at the absolute minimal conduct required, grabbing a water gun, for example, and scaring someone off of your lawn where the individual reasonably fears that they're in physical harm. Mr. Zani, that's the problem. We don't know what constitutes the underlying misconduct here. And what the government has done is say, well, moral turpitude is always involved in crimes because there's this intent element in the danger of doing an injury. And that's enough. You know, I can understand your argument of saying it's not enough, but why don't you tell me why isn't it enough? Well, it's not enough because the way the statutory scheme is set up is it's forcing the courts to decide on an individualized basis whether the minimum conduct is going to be base and violent, you know, meet the standard. And so one's got to take a look at every single, you know, type of conduct that could lead to that particular conviction. So, for example, if you took it at prong two, you know, prank phone calls would constitute a violation of prong two. If you — You do not make any arguments as to prong two and prong three in your brief, do you? Well — You focus on prong one. We focus primarily on prong one. When you say primarily, where do you focus on prongs two and three? Well, we've always focused on them before the court. It was analyzed by the Board of Immigration Appeals. And we've always — we've always disputed that the statute is going to constitute a CIMT offense. We've always disputed that. Certainly it's prong one here on appeal. That's what you're focused on. I would say that the court should look at the statute in its entirety because that's the statute that they're finding. In all scenarios, constitutes a CIMT. And although this court's never addressed this particular issue, some of the sister courts have. For example, in the Ninth Circuit, they've found that an assault with a deadly weapon does not meet the standard of crime involving moral turpitude. And if you take a look, for example, at the BIA's decision here, they're saying, oh, assault with a deadly weapon is always going to constitute a CIMT. Well, that's not true. It doesn't always constitute it. Also, if you take a look — and that's in Saron v. Holder. If you also take a look at the Sixth Circuit in Singh v. Holder, they draw a strong distinction between putting a person in fear by an attempt and actually going forward with trying to harm a person. And here, this menacing statute is simply an attempt. If it's viewed reasonably by the victim as putting them in a reasonable fear, then it's always — you're always able to be convicted for it. And I just find that there's so many examples where the minimum conduct just isn't going to reach that level because you're asking the courts to decide a person's reasonable fear. And what may be reasonable to one person may not be reasonable to another. You have reserved two minutes for rebuttal, so we'll hear from the other side. Ms. Allen. Good morning, Your Honors. May it please the Court. Jeanette Allen for Respondent, the Attorney General. Your Honors, the Board here reasonably determined that Richards' convictions for assault in the third degree and menacing in the second degree constitute crimes involving moral turpitude. As this Court emphasized in Gill, it is in the intent that moral turpitude inheres. And both of Richards' crimes involve the most highly culpable mental state, specific intent. When the Board has assessed assault-type crimes — Say that based on what? I'm sorry? Based on the statute and his conviction. But what did he do, actually? Do you know? Your Honor, this record does not include underlying facts about his convictions. Petitioner has never contested the fact of conviction. And because we don't have underlying facts here, we are actually applying a categorical analysis and looking only at the elements of the state offense and the minimum conduct necessary to achieve a conviction. Right. But what if the situation is he's arrested and he's held in jail for two or three days, and then they say, you know, if you plead guilty to third-degree menacing, we'll let you go? And he said, okay. Just to clear the docket, to be released from jail, to get out of prison, he pleads guilty to a crime, and, yes, he did plead guilty, and the crime is on his record. How does that involve moral turpitude? In that case, you would be looking at the fact that he pled guilty and the conviction and the statute of conviction itself, and not necessarily the policy behind not is that we don't want to retrial it against an immigration court. We want to focus. It's similar to what's done in the sentencing context. You are reflecting what a categorical rule says. I'm sorry? You are reflecting what a categorical rule is. Is that what you mean? Yes. Under a categorical analysis, we only look to the statute of conviction. And if they pled guilty to menacing in the third degree, we would compare the elements of menacing in the third degree to the generic definition of a crime involving moral turpitude, which in this case the Board has developed over the years. The generic definition is reprehensible conduct with some degree of scienter. And in the assault context, which is what we're dealing with here, the Board has historically looked at these cases on a spectrum, where you take into consideration the mental state, the level of harm, and whether there's an aggravating factor. On this spectrum, you have simple assault, a general intent crime, which has historically not been found to involve moral turpitude. On the other end of the spectrum, assault with a deadly weapon has historically been found to involve moral turpitude, even when committed recklessly, which is not what we have here. We have specific intent. So your adversary tells us that the Ninth Circuit may disagree with this? The Ninth Circuit? I'm not— And the Sixth Circuit? Which came as some surprise to me, but I'm always open to surprise. This Court in Gill actually deferred to the Board's conclusion that reckless assault with a deadly instrument resulting in bodily harm is a crime involving moral turpitude. And admittedly, it's not exactly the same. Is there a way in which—I'm not familiar with the Ninth Circuit case, but is there a way in which a court could, under the categorical approach, view an assault with a deadly weapon as anything less than reprehensible conduct? The government's position would be no, that there are—that assault with a deadly weapon— You're not familiar with the Ninth Circuit case? Petitioner would have to provide me with the citation, Your Honor. My understanding of the development of assault-type crimes in the crime-involving moral turpitude context is that assault with a deadly weapon, even when committed recklessly, may constitute a crime involving moral turpitude. But that's not what we have here. And to address Petitioner's point about the water pistol, it's not an entirely accurate representation of New York law. Because when it— No, we haven't had any convictions for water pistols. I'm sorry? We haven't had any prosecutions for illicit use of water pistols. Right. He actually doesn't point to a New York case involving a water pistol. But under New York law, to be convicted under the provision for displaying what appears to be a firearm, there are three elements. The defendant must actually display something, and importantly here, it must be something that could reasonably be perceived to be a firearm. And the victim— This doesn't count, right? No, it doesn't. If it were concealed, perhaps in a vest, it could. But a plastic water pistol, there's a reasonableness element to this inquiry. Even the phrase or word, water pistol, I suppose there could be a water—a black pistol. In fact, I'd bet there is somewhere a black pistol that looks just like a real firearm, except it's a water pistol. I suppose that would count, wouldn't it? Certainly, if it could reasonably be perceived to be a firearm, yes. And if the victim actually— I don't remember exactly what it was, but a case of a boy in a Cleveland park who had a pistol and was a completely harmless pistol that was shot and killed by the police. I mean, that sort of thing suggests that there are water pistols that could be. Yes, Your Honor. But even conceding that point, that wouldn't place this statute of conviction outside the scope of a crime involving moral turpitude, primarily because it involves the specific intent to place another in reasonable fear. Suggesting the same thing. It doesn't matter what it is so long as it is intended to give the impression that it's a weapon and it can reasonably be understood to do that, even if it's a water pistol. Yes. As the Board noted here, the focus is on the apprehension caused in the victim when confronted with something that could reasonably be perceived to be a firearm and on the defendant's intent to cause fear in the victim. As Your Honor pointed out, Petitioner waived any challenge to the Board's determination that subsection 2 and subsection 3 of menacing in the second degree constitute crimes involving moral turpitude. The government's position is nevertheless that this determination was reasonable, as was the determination that assault in the third degree constitutes a crime involving moral turpitude. And two other panels of this Court have deferred to the Board's determination that assault in the third degree is a crime involving moral turpitude. Are there no further questions? Thank you. Thank you, Your Honors. Your Honors, in the statute for 120.14, it's talking about a reasonable fear on the part of the victim. We cannot substitute our decision as to what we would consider a reasonable fear. There could be a scenario where the victim's fear, in our view, would be extremely unreasonable. For example, if the water pistol was ---- No, no, no, no. The statute is cabined by the following, that there must be a specific intent to place that person in reasonable fear of physical injury. But then the victim is required to reasonably perceive it that way. And the New York law hasn't developed what's considered reasonable by the victim or not. I looked for statutory analysis by the New York courts, as has, I believe, government counsel. She comes up with a case where flashing a light was reasonably perceived as a weapon. What's reasonable to us, we can't substitute that in for what would be reasonably perceived as the victim. If you take a look at the absolute minimal conduct, really minor offenses could fit in within the categorical approach under all three of these prongs. If you look at number two, you don't even have to be successful at making the person fearful under prong two. All you have to do is attempt to place them in fear. A telephone prank where you're calling to scare a friend or a neighbor, you know, even unsuccessful in placing them in fear could be a conviction under prong two. It's just too broad. There's no definition that would reach the level of vial or base for the minimum conduct that you could be convicted here. Mere flashing of a light where you're trying to scare someone by flashing of a light, putting them in a fear, I mean, the government cites to that case because it's the one and only case where conduct really is interpreted. So many factual scenarios could be convicted under these offenses. Let me ask you a quick question, actually, that I had not thought of. Can you prevail if we agree with you on the menacing but disagree with you on the assault? Yes. Okay. I would also, just coming back to the assault. Because why is that? Because in order. It's got to be two crimes. Because he's a lawful permanent resident. It's got to be two crimes. For over a decade and he wouldn't be deportable if he had just the one CIMD. Just coming back to the assault in the Ninth Circuit, the case of Ceron v. Holder, I would also say. Did that cite in your briefs? I didn't cite it in my briefs. While you're at it, would you give us a citation? But the board also couldn't cite it and take it into consideration because they were relying on, you know, old precedent, not necessarily the Supreme Court precedent that came out subsequently. What's the citation? Ceron v. Holder is a ninth. I'm sorry. I don't have that. Oh, let's see. No, I have instead Morales Garcia v. Holder, 567F3R1058, Ninth Circuit, 2009, finding that abusive cohabitant or a domestic violence type victim is also not categorically a CIMD. The Ceron v. Holder, I don't have it here in front of me, but I'd be happy to provide that to the board. Okay. Thank you. Thank you, Your Honors. Rule reserve decision. That concludes today's hearing.